**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL NO.  1:05CV316**

| | |
|---|---|
| **LENDA LITTLEJOHN SANDERS,** )  | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM** |
| _____) | **AND ORDER** |
| **TYCO ELECTRONICS CORPORATION,** ) | |
| _____) | |
| **Defendant.** ) | |
| _____) | |

**THIS MATTER** came before the Court for a show cause hearing

conducted on February 23, 2006.

## I.  PROCEDURAL HISTORY

On August 20, 2003, Lenda Littlejohn, who is the same person as the

Plaintiff in this action, filed suit in this Court against Tyco Electronics, the

same Defendant as in this action.  ***Littlejohn v. Tyco Electronics*, Civil**

**Case No. 1:03cv193 (Littlejohn I).**  In that action, the Plaintiff, proceeding

*pro se*, alleged primarily that Tyco had discriminated against her on the

basis of her race by demoting her to a different position.  The case

proceeded to trial and a jury was selected on November 8, 2004.  After business hours on that date (6:40 p.m.), the Plaintiff filed a motion to dismiss the action in which she wrote the following:

> The plaintiff chose to dismiss her claims due to Unethical Conduct in many areas.  This action could have been settle (sic) at the Pre-trial Conference, after the Honorable Lacy Thornburg left the Plaintiff, Defendant, and one of his witness (sic) to discuss a Settlement[.]  She [the Plaintiff] offered the Defendant to pay her back wages, all attorney fees, And the cost of all certified mailing etc.  His response was we're not paying  you Nothing!  Vengeance is mines (sic), "saith the Lord" and the Plaintiff forgives all of those Who cause this action and all of the suffering of emotional distressed (sic) that she had Experienced throughout the last two years of dealing with this ordeal.  Please Forgive me of any thing that I have said to offend anyone also!

**Motion to dismiss claims, filed November 8, 2004.**

On November 9, 2004, the undersigned received a letter, which was filed of record, from the attorneys for the Defendants in Littlejohn I advising the Court that the Plaintiff had accused defense counsel of *ex parte* contact with the Court.  **Letter of November 5, 2004, from Joseph A. Rhodes, Jr., filed November 9, 2004 (Plaintiff was provided with a copy of the letter).**  According to counsel, the Plaintiff threatened that she would file more lawsuits against the Defendant "because this is not over." *Id.*, at 1.

On November 12, 2004, the undersigned dismissed Littlejohn I with prejudice. **Order of Dismissal, filed November 12, 2004.**

On October 17, 2005, the Plaintiff filed this action, this time represented by counsel. **Complaint, filed October 17, 2005 (Littlejohn II).** Here, she raises the same claims as previously made in the first action and an additional claim that although in December 2003 she was promoted, her promotion was at a lower pay level than a white female employee similarly promoted. She also alleged that she was ultimately terminated from employment in February 2005 in retaliation for filing a charge with the Equal Employment Opportunity Commission (EEOC). *Id.,* **at 2.** In its Answer, the Defendant raised *res judicata* as an affirmative defense based on the previous dismissal. It was also noted that the Plaintiff had failed to provide a copy of the right to sue letter from the EEOC, thus failing to show administrative exhaustion. **Answer, filed November 7, 2005, at 2-3.** In response, Plaintiff's attorney filed a motion to amend the complaint, claiming that the proposed amended complaint and the EEOC right to sue letter were attached thereto; they were not. **Motion to Amend, filed December 21, 2005.** Neither the proposed amended complaint nor copies of the EEOC charge and right to sue letter

were ever provided to the Court.  Plaintiff, therefore, failed to establish that she had exhausted her administrative remedies or initiated suit within the applicable time period.

On January 6, 2006, some two weeks after the motion to amend was filed, the Plaintiff, in a *pro se* capacity, wrote to the Court advising that her attorney would shortly move to dismiss this action as well.  **Letter, dated January 5, 2006, filed January 6, 2006.**  In the letter, the Plaintiff complained about her attorney's performance.  *Id.*

On January 18, 2006, the Plaintiff's attorney did, in fact, file a motion to dismiss the action without prejudice.  **Motion to Dismiss without Prejudice, filed January 18, 2006.**  No grounds for the dismissal were alleged.  On that same date, the attorney filed a motion to be relieved as counsel.  As grounds for that motion, counsel wrote that the Plaintiff had threatened him and

> refus[ed] to cooperate with counsel who has insisted that she refrain from her bad faith misrepresentations and insistence upon using said counsel to pursue this frivolous action for the sole purpose of harassing the Defendant herein.

**Motion to be Relieved as Counsel, filed January 18, 2006.**

On January 23, 2006, the undersigned dismissed this action with prejudice based on *res judicata* and the Plaintiff's failure to file proof that

administrative remedies had been exhausted and the action had been timely filed.  The dismissal was also based on the Plaintiff's request that the action be dismissed although she requested a dismissal without prejudice.

In the order dismissing the action, the undersigned ordered Plaintiff to show cause why she should not be sanctioned pursuant to the Court's inherent powers and Federal Rule of Civil Procedure 11.  The Plaintiff was provided an opportunity to respond at a hearing on February 23, 2006.

## II.  THE HEARING

At the hearing, the Plaintiff was provided an opportunity to explain why sanctions should not be imposed against her for her conduct in this case.  However, instead of addressing that issue, the Plaintiff repeatedly attempted to explain why her first action, Littlejohn I, was a valid one. **Transcript of Order to Show Cause Proceeding, filed February 24, 2006, at 1-10.**  When admonished that the hearing was not an opportunity to re-try her first lawsuit, which she voluntarily dismissed, the Plaintiff responded, "No, I'm not trying to.  I'm really not.  I'm not trying to.  I just want to bring out what I tried to do at the first case and I never had the

opportunity to do it[.]" ***Id.*, at 10.** The Plaintiff again reiterated that unethical conduct occurred in connection with her first lawsuit and accused defense counsel of intentionally presenting false documents to the Court. ***Id.*, at 10-11.**

When urged to move forward to address the lawsuit at hand, the Plaintiff than launched an attack against Theo Mitchell, the attorney she hired to bring this suit. ***Id.*, at 12-13.** When asked to explain the difference between the first and second lawsuits, the Plaintiff responded that the first suit was based on a demotion whereas the present suit was based on a promotion. ***Id.*, at 13.** In other words, in the present lawsuit she alleged that she was discriminated against by the Defendant because she received a promotion. The discriminatory conduct, she claimed, stemmed from the fact that a white female employee who was also promoted at about the same time was placed in a higher pay level than the Plaintiff.

The Plaintiff then proceeded to accuse Mr. Mitchell of unethical conduct because she claimed that he filed motions without signing pleadings. It became obvious during the course of the hearing that the Plaintiff did not understand that her attorney had filed the pleadings electronically, as is required by this Court, and thus placed his signature on

the documents electronically.  ***Id., at 13-15, 22-23.***  The Plaintiff also

accused Mr. Mitchell of sending her "fake orders" which had not been

signed by the undersigned.  ***Id., at 21.***  In what manner those "fake orders"

had adversely impacted the Plaintiff was not explained.  The Court took

some time to explain to the Plaintiff that her attorney had, in fact, only sent

proposed orders to the Court for its use.  "This order was never signed by

the Court and was merely a submission by the attorney requesting the

Court to sign it.  In lieu thereof, the Court signed the dismissal with

prejudice, as appears of record."  ***Id., at 21-22.***  The Court then spent

additional time to explain to the Plaintiff that her attorney's use of the

required electronic filing system and his submission to the Court of

proposed orders as a courtesy did not mean that her attorney and/or this

Court were engaged in subterfuge.

The Plaintiff was specifically asked whether at any time she had

threatened defense counsel with more lawsuits.  She responded that

during the pretrial conference in connection with the first lawsuit, she said

"there will be more suits coming, but that I was not bringing it to the Court's

attention in the pretrial . . . due to the fact that I was already in one."  ***Id., at***

***17.***  She also admitted that during the first lawsuit and prior to her

dismissal thereof, she believed that she had been promoted but set at a lower pay scale than a white female employee who was also promoted. *Id.* Indeed, she had filed a second charge of discrimination with the EEOC. However, she did nothing to bring that to the attention of the Court during Littlejohn I and did not move to amend her complaint in that action to add such allegations. In fact, she chose instead to dismiss that action with every intention of suing the Defendant again. *Id.* When the Court repeated its question as to whether the Plaintiff had threatened to bring more lawsuits, the Plaintiff replied that her comments were not threats but facts. *Id.***, at 18.**

The Plaintiff then claimed that during the first trial, her husband listened to a message on their answering machine in their home. *Id.***, at 20.** The Plaintiff claimed that her husband told her the message was from the defense attorney who reported that he had received an order from the Court. *Id.* Based on this report, the Plaintiff concluded that the defense attorney had engaged in an *ex parte* contact with the undersigned. *Id.* The Plaintiff also admitted that it was based on this message, allegedly heard not by her but her husband, that she accused both the defense attorney and the undersigned of unethical conduct. *Id.*

The Plaintiff then proceeded to redirect her complaints toward Mr. Mitchell who brought the second lawsuit. She claimed that she was not satisfied with his services and thus determined to dismiss the second case as well without prejudice. "I saw that, in the direction it was going, it was going to be a mess, so I dismissed the case without prejudice[.]" *Id.*, **at 28.** This, she claimed, was done "only to get the attention of the Court that I'm having some difficulties but I want to save my case and get rid of the attorney that I had." *Id.*

Defense counsel, Drew Rhodes, was asked to address the Court as to the threats made by the Plaintiff to continue litigation. Mr. Rhodes responded that "[s]hortly after the first lawsuit was dismissed, Ms. Littlejohn stated to me that it was not over and that she would bring additional lawsuits." *Id.*, **at 29.** While the Plaintiff interjected an unsolicited denial of this statement, her own admissions establish that not only did she threaten to bring additional suits but the reason she dismissed Littlejohn I was so that she could do so. Mr. Rhodes also addressed the Court as to whether this lawsuit was frivolous.

> [T]he first lawsuit that Ms. Littlejohn brought was without merit, but certainly we could not assert that it was frivolous. With the second lawsuit, we believe that it was frivolous. She had, in the first lawsuit, brought a retaliation charge there over a failure

to promote, so that we feel like that had been addressed already.

***Id.*, at 30.**

Mr. Rhodes then described to the Court a meeting which he had with Mr. Mitchell during which he showed to Mr. Mitchell the job posting notices which had been posted for the position of laser welder. ***Id.*, at 30-31.** Those notices are signed by the employees who want to apply for those jobs; however, the Plaintiff did not sign any such notice. ***Id.*** "Those documents, I believe, convinced Mr. Mitchell that the allegations that we never posted the jobs and simply assigned it to a white employee were not true." ***Id.*** In addition, Mr. Rhodes proved to Mr. Mitchell that the laser welder positions were posted in March 2004 but in July 2004, the Plaintiff wrote on a different job posting that she wanted the position of laser welder, a position which had been filled months earlier. ***Id.*, at 31.** This, Mr. Rhodes explained, further convinced Mr. Mitchell that the Plaintiff's complaints were not valid and he then moved to withdraw as counsel.

At this point, the Plaintiff became agitated and stated:

I feel like that I have many documents, and *I will have to continue to submit these documents to other sources* because I have a lot of proof showing that Mr. Rhodes has not been truthful and that I want to bring it out and address these things because *I feel like I gave him a reasonable amount that I*

*requested from the first suit. In that situation, I was being nice, and by letting go – I tried to let it go. . . . I made a comment, and I wasn't making it because I was trying to get revenge back on the company, but I made a statement because I quoted a piece of a Bible text to let the company know that you are wrong and you did wrong, you did discriminate against me, and that was the reason why I said, Vengeance is mine, saith the Lord."*

. . .

And I felt like that it could have been settled before it got to the point of me filing the suit, when I brought it to the corporate office's attention of Larry Royer and I had mentioned it to him that if you all just pay back a small amount, which was only $600, and put me at my pay level where I was, and the only thing they tried to do was to find out who the witnesses were that I knew that caused this action against me and that I knew about the frame-up, which is true. This mother of this son that they gave this laser welder position to in 2004, his mother started it back in the first lawsuit when I was framed by her and the technician.

**Id., at 32-34 (emphasis added).**

The Court gave the Plaintiff the opportunity to present any documents she chose to do so in connection with this matter. She asked that the documents be returned to her. The undersigned took the time and effort of the Court's staff to make copies of those documents for the Plaintiff before the hearing was adjourned so that she would be satisfied that each document had been returned to her. Within minutes of adjourning Court, the Plaintiff appeared at the office of the Clerk of Court claiming that all of her documents had not been returned to her. Court was

reconvened to explore this allegation only to learn that one document had been returned face down instead of face up causing the Plaintiff to believe that the Court staff had failed to return a document. ***Id.*, at 38-42.** The Plaintiff admitted on the record that every document she submitted was returned to her. ***Id.***

On February 28, 2006, the undersigned received a letter from the Plaintiff in which she continued to harangue on issues stemming from her first lawsuit. **Letter, filed February 28, 2006.** She complained that the laser welder position "would have been a promotion in wages for me in July 2004[.]" She does not state that she properly applied for the position. Attached to the letter, and apparently the reason why the letter was sent, is a copy of the Plaintiff's EEOC charge submitted February 27, 2003. In that charge, she alleged:

> I am an employee of the above-named company. On September 4, 2002, I was demoted form (sic) the position of Laser Welder to the position of Pre-Adjuster.
>
> Ron Feeley, White, Production Manager, told me that I was being demoted because my rate of pay was too high for the position that I held.

**Charge of Discrimination, dated February 27, 2003, *attached to* February 28, 2006, Letter.** In the complaint filed in Littlejohn I and other

documents submitted in that action, the Plaintiff alleged that the Defendant purchased the company for which she was working in 2001 or 2002. After that purchase, the new corporate management determined that employees were to be paid only for the skills actually used on the job. As a result, if an employee was not performing services which warranted a certain pay level, the employee's pay was adjusted. The Plaintiff admitted in various documents that this was what happened to her.

Among the documents submitted to the Court during the hearing is the EEOC charge submitted by the Plaintiff on December 3, 2004. In that document, the Plaintiff made the following allegations:

> Around July 20, 2004, I learned I was denied the opportunity to apply for the Laser Welder position. I am more qualified that (sic) the white male who was selected for the position.
>
> Also, since the filing of a previous charge, and subsequent lawsuit, against the company, I have been retaliated against including, but not limited to, having my work sabotaged and discipline (sic). Specifically, on November 17, 2004, I was given a written warning for being in possession of certain documents, which the company learned about though (sic) the discovery process in the lawsuit. These documents were related to my original charge and lawsuit.
>
> Additionally, on October 25, 2004, I learned (through discovery in the lawsuit), when I was promoted to the position of Stock Room/Operations Associate III on December 15, 2003, I was started at a lower wage than a white female who was promoted to an Inspector position on October 3, 2003. Both jobs are in

the same pay category and our pay was the same before either
of us were promoted.

**Charge of Discrimination, submitted December 3, 2004.** During the

hearing the Plaintiff also provided a copy of the right to sue letter which

was mailed on July 22, 2005.


### III.  DISCUSSION

Because the Plaintiff submitted at the hearing a copy of the EEOC

charge and the right to sue letter in connection with this lawsuit, the Court

will briefly revisit the issue of the dismissal of the action.[1]

The December 3, 2004, EEOC charge shows that the Plaintiff did in

fact exhaust her administrative remedies and the right to sue letter shows

that this action was, in fact, timely brought.  Of course, at the time the

undersigned dismissed this action, these documents had not been made a

part of the record.  During the hearing, the Plaintiff claimed that she had

given these documents to her attorney and she was at a loss as to why he

would not have provided them to the Court.  Nonetheless, the Court finds

that the principles of *res judicata* bar this second action.

_____

[1]It is specifically noted, however, that no motion to reconsider, amend
or for other relief is pending before the Court.

Under the doctrine of *res judicata*, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

*Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004) (quoting

*Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) and

*Brown v. Felsen*, 442 U.S. 127, 131 (1979)) (other citations omitted).

It is first noted that the dismissal of Littlejohn I with prejudice

constitutes a final decision on the merits. *Harrison v. Edison Bros.*

*Apparel Stores, Inc.*, 924 F.2d 530, 534-35 (4th Cir. 1991) (cases

dismissed with prejudice normally considered to be final judgments

on the merits); *accord, Millville Quarry, Inc. v. Liberty Mut. Fire Ins.*

*Co.*, 217 F.3d 839 (table), 2000 WL 1005202, **3 n.4 (4th Cir. 2000)

(citing *Larkin v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999) (action

dismissed with prejudice considered to be a final judgment on the

**merits)).**  And, it cannot be disputed that there is an identity of the parties in both suits.

The Plaintiff's claims in Littlejohn I were brought pursuant to Title VII, 42 U.S.C. §§ 1981 and 1983.  The same statutes formed the basis of her claims for relief in Littlejohn II.  In Littlejohn I, the Plaintiff claimed she was demoted because after the plant at which she worked was purchased, the new employer required that all employees be able to perform all functions of the job for which they were paid.  Because that was not the case; she was transferred to a different job and paid less.  This, she claimed, occurred due to her race.  In that complaint, the Plaintiff also made various allegations that job postings for the laser welder position were not posted and thus, she was not able to re-apply for the job.  Moreover, the Plaintiff made allegations in the first complaint that her work was "sabotaged" in an effort to make her look bad and that she was retaliated against.

Plaintiff's second complaint in Littlejohn II echoes those same laments.  She claims she was not allowed to apply for the laser welder position, her work was sabotaged in retaliation for the first lawsuit, and in October 2004, she learned that although she had actually been promoted

almost one year earlier, her pay was not commensurate with the pay of a white female employee who had been promoted.

Clearly, "the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" ***Pueschel,* 369 F.3d at 355 (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)).** Both suits asserted claims that the Plaintiff was discriminated and retaliated against by demotion, failure to promote or to be allowed to apply for certain positions, sabotaging of work, and failure to receive adequate pay. She clearly alleged in both suits that the conduct continued. *Id.*

The only issue for resolution is whether *res judicata* may attach when the Plaintiff had not yet filed the second EEOC charge. By the Plaintiff's own admission, at the time she elected to dismiss her first lawsuit in November 2004, she was aware of every allegation later raised in the second EEOC charge. Thus, she could have submitted that EEOC charge prior to dismissing that lawsuit.

"A right-to-sue letter is a condition precedent to filing a Title VII claim." ***Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314-15 (5th Cir. 2004).** The issue, then, is

whether a Title VII claim may be barred by *res judicata* if, at the time of the earlier suit, the plaintiff[] ha[s] not yet received a right-to-sue letter.  . . .  Although the plaintiff did not have [the second] right-to-sue letter from the EEOC when she initiated [Littlejohn I], . . . to avoid the sting of *res judicata*, the plaintiff could have filed [Littlejohn I], sought a stay in the district court pending the outcome of her [second] EEOC proceeding[], and then joined [Littlejohn II with Littlejohn I] once she received her [second] right-to-sue letter. . . .  [O]ther circuits have similarly held that Title VII claims were barred where plaintiffs failed to take measures to avoid preclusion under *res judicata* while they pursued the requisite Title VII remedies. . . .  [A] plaintiff who brings a Title VII action and files administrative claims with the EEOC must still comply "with general rule governing federal litigation respecting other potentially viable claims."

*Id.*, at 315-16 (quoting ***Woods v. Dunlop Tire Corp.***, 972 F.2d 36, 39-40 (2d Cir. 1992)) (other internal citations omitted).  As a result, the Court finds that the second action is barred.

The Court, therefore, moves to the issue of sanctions.  It is first noted that pursuant to the Court's inherent powers and Federal Rule of Civil Procedure 11, the undersigned may impose sanctions on a party who is or was represented by counsel.  **3D *Moore's Federal Practice*, §11.41[2] (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-47 (1991)); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991)**

**("Rule 11 subjects the client – 'the represented party' – to sanctions even if he has not signed the offending paper.").**

Federal Rule of Civil Procedure 11 provides in pertinent part:

By presenting to the court . . . a pleading, . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances-
    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law . . .;
    (3) the allegations and other factual contentions have evidentiary support or, . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

**Fed. R. Civ. P. 11(b).** The Plaintiff's attorney, acting as an officer of the Court, moved for leave to withdraw based on his conclusion that the Plaintiff was intent on pursuing this litigation in order to harass the Defendant. **Motion to be Relieved as Counsel, filed January 18, 2006.** In the motion, counsel noted that the Plaintiff "refus[ed] to cooperate with counsel who has insisted that she refrain from her bad faith misrepresentations and insistence upon using said counsel to pursue this frivolous action for the sole purpose of harassing the Defendant herein." *Id.* This Court does not make a credibility determination between Mr.

Mitchell and the Plaintiff.  However, during the hearing, Mr. Rhodes

reiterated that "[s]hortly after the first lawsuit was dismissed, Ms. Littlejohn

stated to me that it was not over and that she would bring additional

lawsuits." **Transcript, *supra*, at 29.**  And, the Plaintiff's own statements

made during the hearing are telling.  When asked if she threatened

defense counsel with more litigation during the pretrial conference in

connection with the first lawsuit, the Plaintiff stated on the record that she

had told him "there will be more suits coming, but that I was not bringing it

to the Court's attention in the pretrial . . . due to the fact that I was already

in one."  ***Id.*, at 17.**  At one point during the hearing, the Plaintiff actually

threatened further litigation against the Defendant.

> I will have to continue to submit these documents to other
> sources because I have a lot of proof showing that Mr. Rhodes
> has not been truthful and that I want to bring it out and address
> these things because I feel like I gave him a reasonable
> amount that I requested from the first suit.  In that situation, I
> was being nice, and by letting go – I tried to let it go.
> . . .
> And I felt like that it could have been settled before it got to the
> point of me filing the suit[.]

***Id.*, at 32-34.**  When the Court repeated its question as to whether the

Plaintiff had threatened to bring more lawsuits, the Plaintiff replied that her

comments were not threats but facts.  ***Id.*, at 18.**

> [I]t may be appropriate under the circumstances of the case to impose a sanction on the client.  In many instances, in fact, it is the client, not the attorney, who is in a better position to investigate the facts of the case and assure that the information ultimately provided to the court is correct.
>
> . . .
>
> Because [Rule 11] allows courts to sanction not only the attorney involved in the case but also anyone who is responsible for the violation, the issue is not whether a party against whom sanctions are sought has signed the subject document; rather, a court will determine a party's responsibility for a violation by analyzing the facts leading up to the violation, rather than by reference to whose signature appears on the paper.  Courts generally allocate sanctions between clients and his or her attorney based on their respective culpability, and where the client misleads the attorney by providing incorrect information, the client should bear the sanctions.

**In re Kilgore, 253 B.R. 179, 186-87 (Bankr. D.S.C. 2000) (quotations and internal citations omitted).**

The Court, therefore, will review the Plaintiff's conduct in the filing and pursuit of this action under an objective standard of reasonableness. **In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990).**  "Filing a complaint in federal court is no trifling undertaking."  **Christian v. Mattel, Inc., 286 F.3d 1118, 1127 (9th Cir. 2002).**  "One of the fundamental purposes of Rule 11 is to 'reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary

expense in litigation.'" *Id.* **(quoting *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986)).**

There is every indication from the record and the Plaintiff's conduct during the hearing that in the filing and pursuit of this litigation she has acted in bad faith, vexatiously, and to harass and obtain revenge against the Defendant. Her behavior also indicates that she is at times unable to control her anger; thus, her bold threat before this Court to continue to press her case because she knows she is in the right. Even during the hearing, the Plaintiff continued to speak to the small amount of money that she believes is due to her. "Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims, as demonstrated in this case." ***Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001).**

However, there appears to be a significant amount of paranoia which may motivate much of the Plaintiff's conduct.[2] Throughout both cases, she

---

[2]It is axiomatic that a district court must make credibility determinations when ruling on the evidence submitted in support of and in opposition to Rule 11 sanctions. ***Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990).** In deciding whether a party has violated Rule 11, "a court must make some assessment of the [litigant's] credibility." ***Id.***

accused her employer and fellow employees of "framing her." Throughout both cases, she has accused opposing counsel as well as her own attorney of unethical conduct. As a result of her attorney's use of the electronic filing system and submission of proposed orders, the Plaintiff leaped to the conclusion that he was in some manner deceiving her. Indeed, she did not spare the Court itself from accusations of unethical conduct. Her "conspiracy-like" theories went so far as to accuse court personnel of withholding a document from her when, in actuality, a great favor was done the Plaintiff by making copies for her.

Considering this behavior on balance with the revengeful and spiteful nature of comments made by the Plaintiff, the Court concludes that some of the Plaintiff's behavior may stem from a sincere misunderstanding or paranoid belief related to her employer's conduct, *albeit* that the Plaintiff has not acted rationally based thereon. Indeed, she has made vitriolic and outrageous accusations against the Defendant, defense counsel, her

---

Indeed, rulings on such motions "are fact-specific and almost invariably require assessments of credibility." ***In re Downs*, 103 F.3d 472, 481 n.3 (6th Cir. 1996) (quotations omitted); *accord, In re Cascade Energy & Metals Corp.*, 87 F.3d 1146, 1149 (10th Cir. 1996); *Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259 (2d Cir. 1994); *In re Kunstler, supra*.**

attorney and the Court itself without any evidence in support thereof.

***Wahler v. United States IRS*, 2002 WL 32081856, \*\*5-6 (W.D.N.C. 2002), *aff'd*, 62 Fed. Appx. 526 (4th Cir. 2003).** "The fact that so many allegations in the complaint lacked a basis in law or in fact strongly supports the court's finding of improper purpose," such as harassment. ***Kunstler*, 914 F.2d at 519.** "Moreover, [such allegations] typified the harassing, bad faith nature in which [the Plaintiff] prosecuted this case." ***Byrne*, 261 F.3d at 1112; *In re Kunstler*, *supra* ("Repeated filings, [and] the outrageous nature of the claims made, . . . are all appropriate indicators of an improper purpose.").** And, her conduct has expended enormous court resources which should have been used on meritorious cases. ***Buster v. Greisen*, 104 F.3d 1186, 1190 n.4 (9th Cir. 1997) ("Although prior to the [1993] amendments conduct was measured only at signing, Rule 11 now authorizes sanctions for 'presenting to the court (whether by signing, filing, submitting, or *later advocating*)' a document otherwise sanctionable." (internal citations omitted)); *Turner v. Sungard Business Sys., Inc.,* 91 F.3d 1418, 1422 (11th Cir. 1996) ("That the contentions contained in the complaint were not frivolous at the time it was filed does not prevent the district court**

**from sanctioning Penick for his continued advocacy of them after it**

**should have been clear that those contentions were no longer**

**tenable.").**

However, the "primary or 'first' purpose of Rule 11 is to deter future

litigation abuse." *In re Kunstler*, **914 F.2d at 522.** As a result, the

undersigned finds that the primary purpose of sanctioning the Plaintiff,

whether pursuant to Rule 11 or inherent powers, is to prevent her from

suing this Defendant again.[3] The sanction imposed for a violation of Rule

11 "shall be limited to what is sufficient to deter repetition of such

conduct[.]" **Fed. R. Civ. P. 11(c)(2).** It is noted that the Defendant did not

---

[3]"A federal court also possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct." *In re Weiss*, **111 F.3d 1159, 1171 (4ᵗʰ Cir. 1997).** Moreover, "[a] court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule [11]." *Id.*

> "A finding of bad faith is warranted where an attorney [or a client] knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." ... [A] finding of bad faith is "the key to unlocking the inherent power[.]"

**Byrne, 261 F.3d at 1121 (quoting *Barnes v. Dalton*, 158 F3d 1212, 1214 (11ᵗʰ Cir. 1998)) (other citations omitted).** The Court finds, for the reasons stated *infra*, that the Plaintiff acted in bad faith.

move for attorneys' fees and, therefore, an award of such fees would not

be appropriate.[4]  *Id.*


## IV.  ORDER

**IT IS, THEREFORE, ORDERED** that pursuant to this Court's

inherent powers and Federal Rule of Civil Procedure 11, the Court hereby

**SANCTIONS** Lenda Littlejohn Sanders as follows:

1.    Lenda Littlejohn Sanders is hereby **ENJOINED** from bringing an

action against Tyco Electronics Corporation in the United States

District Court for the Western District of North Carolina pertaining or

relating to any allegations or legal claims made in either of the two

prior litigations.

2.    In the event that Lenda Littlejohn Sanders violates this injunction, a

penalty of $1,000 shall be imposed against her and she shall be

required to pay such penalty into Court.  In the event that such a

---

[4]While the Court did not receive formal evidence of the Plaintiff's financial condition, the documents she submitted at the hearing showed that she had paid a substantial retainer in the amount of approximately $20,000 to her previous attorney.  The Court, therefore, concludes that in the event a penalty were to be imposed, she would have the ability to pay the amount stated herein.

penalty is imposed, it shall not preclude the Defendant from moving for further sanctions against the Plaintiff, including a motion for an award of attorneys' fees.

3.      No motion to reconsider this decision may be filed; however, the Plaintiff may, but is not required to, file a notice of appeal from the imposition of sanctions.

The Clerk of Court is instructed to serve this Order on the Plaintiff by certified mail, return receipt requested; copies to Defendant's counsel may be transmitted electronically.  A copy of this Order shall also be provided to each member of the judiciary and to each staffed office of the Clerk of Court in this District.

Signed: April 12, 2006

Lacy H. Thornburg
United States District Judge